1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

SHALEENA M. MILLER,

                              Plaintiff,

       v.

MICHAEL J. ASTRUE. Commissioner of
Social Security,

                          Defendant.

Case No. 3:12-cv-05080-RBL-KLS

REPORT AND RECOMMENDATION

Noted for December 7, 2012

Plaintiff has brought this matter for judicial review of defendant's denial of her applications for disability insurance and supplemental security income ("SSI") benefits.  This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule MJR 4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261 (1976).  After reviewing the parties' briefs and the remaining record, the undersigned submits the following Report and Recommendation for the Court's review, recommending that for the reasons set forth below, defendant's decision to deny benefits should be reversed and this matter should be remanded for further administrative proceedings.

FACTUAL AND PROCEDURAL HISTORY

On June 25, 2008, plaintiff filed an application for disability insurance benefits and another one for SSI benefits, alleging disability as of June 30, 2007, due to spine problems. See

REPORT AND RECOMMENDATION - 1

Administrative Record ("AR") 17, 114, 118.  Both applications were denied upon initial

administrative review on November 17, 2008, and on reconsideration on March 9, 2009. <u>See</u> AR

17.  A hearing was held before an administrative law judge ("ALJ") on April 7, 2010, at which

plaintiff, represented by counsel, appeared and testified, as did a vocational expert. <u>See</u> AR 35-

63.

On April 9, 2010, the ALJ issued a decision in which plaintiff was determined to be not

disabled. <u>See</u> AR 17-25.  Plaintiff's request for review of the ALJ's decision was denied by the

Appeals Council on November 25, 2011, making the ALJ's decision defendant's final decision.

<u>See</u> AR 1; <u>see also</u> 20 C.F.R. § 404.981, § 416.1481.  On February 14, 2012, plaintiff filed a

complaint in this Court seeking judicial review of the ALJ's decision. <u>See</u> ECF #5.  The

administrative record was filed with the Court on May 7, 2012. <u>See</u> ECF #13.  The parties have

completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues defendant's decision should be reversed and remanded for an award of

benefits, or in the alternative for further administrative proceedings, because the ALJ erred: (1)

in evaluating the medical evidence in the record; (2) in discounting plaintiff's credibility; (3) in

assessing plaintiff's residual functional capacity; and (4) in finding her to be capable of

performing other jobs existing in significant numbers in the national economy.  The undersigned

agrees the ALJ erred in determining plaintiff to be not disabled, but, for the reasons set forth

below, recommends that while defendant's decision should be reversed, this matter should be

remanded for further administrative proceedings.

<u>DISCUSSION</u>

The determination of the Commissioner of Social Security (the "Commissioner") that a

claimant is not disabled must be upheld by the Court, if the "proper legal standards" have been

REPORT AND RECOMMENDATION - 2

applied by the Commissioner, and the "substantial evidence in the record as a whole supports" that determination. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); see also Batson v. Commissioner of Social Security Admin., 359 F.3d 1190, 1193 (9th Cir. 2004); Carr v. Sullivan, 772 F.Supp. 522, 525 (E.D. Wash. 1991) ("A decision supported by substantial evidence will, nevertheless, be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.") (citing Brawner v. Secretary of Health and Human Services, 839 F.2d 432, 433 (9th Cir. 1987)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation omitted); see also Batson, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record."). "The substantial evidence test requires that the reviewing court determine" whether the Commissioner's decision is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required." Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). "If the evidence admits of more than one rational interpretation," the Commissioner's decision must be upheld. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence sufficient to support either outcome, we must affirm the decision actually made.") (quoting Rhinehart v. Finch, 438 F.2d 920, 921 (9th Cir. 1971)). [1]

---

[1] As the Ninth Circuit has further explained:

> . . . It is immaterial that the evidence in a case would permit a different conclusion than that which the [Commissioner] reached.  If the [Commissioner]'s findings are supported by substantial evidence, the courts are required to accept them.  It is the function of the [Commissioner], and not the court's to resolve conflicts in the evidence.  While the court may not try the case de novo, neither may it abdicate its traditional function of review.  It must scrutinize the record as a whole to determine whether the [Commissioner]'s conclusions are rational.  If they are . . . they must be upheld.

Sorenson, 514 F.2d at 1119 n.10.

REPORT AND RECOMMENDATION - 3

I.      The ALJ's Evaluation of the Medical Evidence in the Record

        The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982).  In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999).  Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

        In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725.  The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id.  The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642.  Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

        The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996).  Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31.  However, the ALJ "need not discuss all evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984)

REPORT AND RECOMMENDATION - 4

1   (citation omitted) (emphasis in original).  The ALJ must only explain why "significant probative

2   evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981);

3   Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

4           In general, more weight is given to a treating physician's opinion than to the opinions of

5   those who do not treat the claimant. See Lester, 81 F.3d at 830.  On the other hand, an ALJ need

6   not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and

7   inadequately supported by clinical findings" or "by the record as a whole." Batson v.

8   Commissioner of Social Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); see also Thomas v.

9

10  Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir.

11  2001).  An examining physician's opinion is "entitled to greater weight than the opinion of a

12  nonexamining physician." Lester, 81 F.3d at 830-31.  A non-examining physician's opinion may

13  constitute substantial evidence if "it is consistent with other independent evidence in the record."

14  Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

15          A.      Dr. Virgin

16          Plaintiff argues that although the ALJ discussed some the medical records in the record

17

18  from her treating physician, Robin Virgin, M.D., she erred by failing to give any reason for not

19  adopting them and by not mentioning Dr. Virgin by name.  As to the ALJ's failure to mention

20  Dr. Virgin by name, the undersigned finds no error here, as plaintiff has not shown how she has

21  been prejudiced thereby.  There is no requirement that medical providers, even treating sources,

22  be mentioned by name in an ALJ's decision.  In addition, as plaintiff herself acknowledges, the

23  ALJ in this case expressly discussed Dr. Virgin's records.

24

25          Nor does the undersigned find any impropriety in the ALJ's alleged error in not giving

26  any reason for rejecting those records.   Dr. Virgin's records do not contain any opinions as to

REPORT AND RECOMMENDATION - 5

the existence of work-related limitations, but instead record plaintiff's self-reported complaints, diagnoses of physical impairments, notes concerning recommended and prescribed treatment, and some objective clinical findings. See AR 227-33, 307-17, 322-23, 330-32.  But "[t]he mere existence of an impairment" – or the fact that some clinical findings have been made and that treatment has been provided or recommended – "is insufficient proof of a disability." Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993).  As discussed in greater detail below, furthermore, the ALJ did not err in finding plaintiff was not fully credible regarding her subjective complaints and allegations of total disability.

Plaintiff argues that this misses the point, that the medical records "are not significant because they include an assessment of work-related limitations," but because "they document findings and diagnoses which provide an evidentiary basis for the limitations [she] described in her statements and testimony." ECF #18, p. 3.  This argument is valid, though, only in regard to the issue of whether plaintiff has medically determinable impairments that "could reasonably be expected to cause [her] alleged symptoms," which plaintiff again acknowledges the ALJ did in this case. AR 21; see also Bunnell v. Sullivan, 947 F.2d 341, 343 (9th Cir.1991).  Such records, though, do not themselves – again, absent the existence of actual opined work-related limitations contained therein – provide support for the level of severity regarding those symptoms plaintiff is claiming.

B.      Other Medical Evidence Regarding Alleged Physical Impairments

Plaintiff makes a similar argument regarding medical evidence from a physical therapy session she attended in early October 2007, and from John L. Hart, D.O., who examined her in late January 2009. See ECF #16, pp. 4-5 (quoting and citing AR 219-20, 304).  Specifically, she asserts the ALJ discussed this evidence, but did not give any reason for rejecting it.  But for the

same reasons plaintiff's argument concerning Dr. Virgin's medical records lacks merit, so too does her argument here.  On the other hand, the undersigned agrees that the ALJ erred in failing to properly account for the need to alternate between sitting and standing/walking assessed by Brian Gehley, PT, in late March 2010.

Based on a one-hour physical capacities evaluation, Mr. Gehley opined that plaintiff was "appropriate for full time, light duty work without positional restrictions," but would "do better if she can change positions between sitting and standing/walking every 20-30 minutes." AR 354. In her decision, the ALJ found Mr. Gehley's evaluation supported a finding that plaintiff was "capable of light exertion work with postural and manipulative limitations and some limitations in neck positions." AR 22.  Plaintiff argues that while the ALJ did not err in so finding, she erred in failing to include with the sit/stand option she assessed, an additional need to shift to walking as found by Mr. Gehley. [2] See AR 20.

Defendant states plaintiff's argument here is misplaced, asserting that an ALJ's finding that a claimant needs a sit/stand option (i.e., that he or she needs to alternate between sitting and standing), "necessarily contemplates getting up from sitting and then either standing or walking for awhile before returning to sitting." ECF #17, p. 7.  Defendant relies on the language of Social Security Ruling ("SSR") 83-12 for this proposition, which reads in relevant part:

> 1. *Alternate Sitting and Standing*
> In some disability claims, the medical facts lead to an assessment of [residual functional capacity ("]RFC["]) which is compatible with the performance of either sedentary or light work except that the person must alternate periods of sitting and standing. The individual may be able to sit for a time, but must then get up and stand or walk for awhile before returning to sitting. . . .

---

[2] Plaintiff also finds fault with the ALJ for failing "to acknowledge that Mr. Gehley based his opinion on a one-hour assessment, so it is unclear how accurate his assessment would be for determining [plaintiff's] ability to perform activities for a full eight hour workday." ECF #16, p. 5.  But plaintiff does not explain or cite any evidence showing how a one-hour physical capacity evaluation, and that provided by Mr. Gehley in particular, results in an inaccurate description of plaintiff's capacity to perform physical activity on a full-time basis.

REPORT AND RECOMMENDATION - 7

Id., 1983 WL 31253 *4.  At most, however, this language appears to recognize that when an ALJ assesses a sit/stand option, that option *may* include the need to stand or walk, and not that in each case both options must be presumed to be included as defendant argues.  In other words, the verb "must" more reasonably is read to mean that a sit/stand option necessarily contemplates the need to get up and stand or walk, but does not mandate which option – or whether as defendant would have it here both options – is contemplated where the ALJ fails to so specify.

In this case, as noted above, the ALJ did not specify what option or options she had in mind in imposing a sit/stand option, even though she was aware of Mr. Gehley's opinion that plaintiff would "do better if she can change positions between sitting and standing/walking." AR 22, 354; see also AR 20.  Thus, to the extent the ALJ intended to include an option to both walk and stand in her RFC assessment that is not at all clear.  What is clear, however, is that at the very least Mr. Gehley believed plaintiff needed to have the option of "walking about" for less than 15 minutes after sitting. AR 358-59.  The importance of the absence of this option in the ALJ's residual functional capacity assessment in terms of its prejudicial effect on plaintiff's claim is further made clear, by the absence thereof in the hypothetical question the ALJ posed to the vocational expert at the hearing. See AR 61.  That is, even if the ALJ did intend to include a walking option in her RFC assessment, that option was not presented to the vocational expert for consideration when testifying as to plaintiff's ability to perform other jobs.

C.    Other Medical Evidence Regarding Alleged Mental Impairments

Plaintiff cites to various diagnoses, clinical findings and self-reported mental health symptoms contained in medical records from Scott T. Alvord, Psy.D., and Colby Rauch, PMHNP, arguing that while the ALJ gave these findings some weight, she failed to acknowledge they "provide an objective evidentiary basis for [plaintiff's] complaint's [sic] of anxiety and

REPORT AND RECOMMENDATION - 8

1   depression." See ECF #16, pp 5-7 (citing and quoting 283, 287, 340-42).  Once more, though, for

2   the same reasons the ALJ did not err in regard to the medical evidence from Dr. Virgin and Dr.

3   Hart discussed above, she also did not err here, in light of the fact that none of this evidence

4   establishes the existence of actual work-related limitations, and the ALJ did not err in

5   discounting plaintiff's credibility.

6          Plaintiff makes the same argument with respect to a mental health intake evaluation

7   performed by Kristin Poage, MA, MHP, in which Mr. Poage recorded some clinical findings,

8   diagnosed plaintiff with posttraumatic stress disorder and rule-out borderline personality disorder

9   traits, and gave her a global assessment of functioning ("GAF") score of 50.[3] See AR 373-74.

10  With respect to Ms. Poage, the ALJ found in relevant part that:

12          . . . Kristine Poage, MA, a therapist who began seeing the claimant in
13          February 2010, reported in March 2010 that the claimant's functional
            limitations were unknown (Exhibits 16F, 17F).  In an addendum she noted
14          that the claimant reported difficulty with anxiety in social situations which
            would cause impairment in a work environment and had also reported a
15          history of difficulty maintaining employment (Exhibit 18F).  This statement
            addresses only what the claimant described and does not contain any
16          observations or mental status findings.  It is given little weight in assessing the
            claimant's residual functional capacity.
17

18  AR 23.  Plaintiff does not present any specific argument challenging these stated reasons for

19  discounting Ms. Poage's opinion, and therefore this challenge is not entitled to any particular

20  merit.  See Carmickle v. Commissioner of Social Sec. Admin., 533 F.3d 1155, 1161 n.2 (9th Cir.

21  2008) (issue not argued with specificity in briefing will not be addressed); Paladin Associates.,

---

[3] A GAF score is "a subjective determination based on a scale of 100 to 1 of 'the [mental health] clinician's
judgment of [a claimant's] overall level of functioning.'" Pisciotta v. Astrue, 500 F.3d 1074, 1076 n.1 (10th Cir.
2007) (citation omitted).  It is "relevant evidence" of the claimant's ability to function mentally. England v. Astrue,
490 F.3d 1017, 1023, n.8 (8th Cir. 2007).  "A GAF score of 41-50 indicates '[s]erious symptoms . . . [or] serious
impairment in social, occupational, or school functioning,' such as an inability to keep a job." Pisciotta, 500 F.3d at
1076 n.1 (quoting Diagnostic and Statistical Manual of Mental Disorders (Text Revision 4th ed. 2000) at 34); see
also England v. Astrue, 490 F.3d 1017, 1023, n.8 (8th Cir. 2007) (GAF score of 50 reflects serious limitations in
individual's general ability to perform basic tasks of daily life).

REPORT AND RECOMMENDATION - 9

1    Inc. v. Montana Power Co., 328 F.3d 1145, 1164 (9th Cir. 2003) (by failing to make argument in

2    opening brief, objection to district court's grant of summary judgment was waived); Kim v.

3    Kang, 154 F.3d 996, 1000 (9th Cir.1998) (matters not specifically and distinctly argued in

4    opening brief ordinarily will not be considered).  Nevertheless, the undersigned finds the ALJ's

5    stated reasons to be proper and supported by the record.[4]

6          The ALJ also did not err in failing to acknowledge, as plaintiff asserts, that she "has

7    consistently been taking psychotropic medications to treat her mental health conditions" (ECF

8    #16, p. 7), as the mere fact that a claimant takes medications is insufficient to establish the

9    presence of actual work-related limitations, let alone a finding of disability.  Lastly, plaintiff

10   argues the ALJ erred in not giving sufficient weight to the disability opinion offered by Pat

11   Sumlin, LMFT, with regard to which the ALJ found as follows:

12
          Pat Sumlin, LMFT, who has not treated the claimant but is an acquaintance,
13        reported in April 2010 that the claimant is sensitive to criticism and has
          extreme mood shifts.  She has intrusive memories.  Ms. Sumlin provides a list
14        of 20 mental health diagnoses.  She states the claimant cannot sustain an 8-
          hour workday and would be absent more than 3 times a month.  She describes
15        marked to extreme limitations in numerous work-related areas and opines
          these limitations have existed for at least 10 years.  (Exhibit 19F).  As Ms.
16        Sumlin is not an acceptable medical source and has not seen the claimant on a
          professional basis, her assessment of the claimant's diagnoses and functional
17        limitations is given no weight.  The undersigned has considered her
          allegations as a lay witness but finds they are not credible.  Although she
18        reports debilitating limitations for at least 10 years, the claimant has worked at
          substantial gainful activity levels and has attended college during this time
19        period and has been the primary caregiver for her daughter over the past 2
          years.  These activities are not consistent with the limitations described by Ms.
20        Sumlin.

21
22   AR 23.  Once more, plaintiff does not address the specific reasons for rejecting Ms. Sumlin's

23
24
25   ───────────────
     [4] See AR 364-80; Batson, 359 F.3d at 1195 (ALJ need not accept opinion of treating physician if it is inadequately
26   supported by clinical findings); Tonapetyan, 242 F.3d at 1149 (ALJ may disregard medical opinion premised on
     claimant's complaints where record supports ALJ in discounting claimant's credibility); Morgan, 169 F.3d at 601
     (opinion of physician premised to large extent on claimant's own accounts of her symptoms and limitations may be
     disregarded where those complaints have been properly discounted).

opinion here, and thus her argument need not be considered. <u>See Carmickle</u>, 533 F.3d at 1161

n.2; <u>Paladin</u>, 328 F.3d at 1164; <u>Kim</u>, 154 F.3d at 1000.  Further, as with the ALJ's treatment of

Ms. Poage's findings, those reasons are valid.[5]

II.     <u>The ALJ's Assessment of Plaintiff's Credibility</u>

Questions of credibility are solely within the control of the ALJ. <u>See Sample</u>, 694 F.2d at

642.  The Court should not "second-guess" this credibility determination. <u>Allen</u>, 749 F.2d at 580.

In addition, the Court may not reverse a credibility determination where that determination is

based on contradictory or ambiguous evidence. <u>See id.</u> at 579.  That some of the reasons for

discrediting a claimant's testimony should properly be discounted does not render the ALJ's

determination invalid, as long as that determination is supported by substantial evidence.

<u>Tonapetyan</u> , 242 F.3d at 1148.

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent

reasons for the disbelief." <u>Lester</u>, 81 F.3d at 834 (citation omitted).  The ALJ "must identify what

testimony is not credible and what evidence undermines the claimant's complaints." <u>Id.</u>; <u>see also</u>

<u>Dodrill v. Shalala</u>, 12 F.3d 915, 918 (9th Cir. 1993).  Unless affirmative evidence shows the

claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear

and convincing." <u>Lester</u>, 81 F.2d at 834.  The evidence as a whole must support a finding of

malingering. <u>See O'Donnell v. Barnhart</u>, 318 F.3d 811, 818 (8th Cir. 2003).

---

[5] Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must take into account,"
unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to each witness for
doing so." <u>Lewis v. Apfel</u>, 236 F.3d 503, 511 (9th Cir. 2001).  In rejecting lay testimony, the ALJ need not cite the
specific record as long as "arguably germane reasons" for dismissing the testimony are noted, even though the ALJ
does "not clearly link his determination to those reasons," and substantial evidence supports the ALJ's decision. <u>Id.</u>
at 512.  The ALJ also may "draw inferences logically flowing from the evidence." <u>Sample</u>, 694 F.2d at 642.  An
ALJ, furthermore, may reject lay witness evidence if other evidence in the record regarding the claimant's activities
is inconsistent therewith. <u>See Carmickle</u>, 533 F.3d at 1164 (ALJ's rejection of lay witness evidence because it was
inconsistent with claimant's successful completion of continuous full-time coursework constituted reason germane
to lay witness).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996).  The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. See id.

The ALJ in this case discounted plaintiff's credibility in part on the basis that the medical evidence in the record regarding her physical impairments did not completely support her alleged symptoms. See AR 21-22.  A determination that a claimant's subjective complaints are "inconsistent with clinical observations" can satisfy the clear and convincing requirement. Regennitter v. Commissioner of SSA, 166 F.3d 1294, 1297 (9th Cir. 1998).  The undersigned finds this reason proper to the extent discussed above that the ALJ did not err in evaluating the medical evidence in the record, but not in regard to the need for a sit/stand option for the reasons also discussed above.  As such, the ALJ erred in part here.[6]

The ALJ next discounted plaintiff's credibility for the following reasons:

> Although the claimant testified to severe fatigue, treatment records reflect repeated denials of fatigue.  She denied fatigue or weakness in August 2008 and in September 2008 (Exhibit 4F-7, 11).  She again denied such symptoms in January 2009 (Exhibit 10F-2).  She continued to deny fatigue in August 2009 (Exhibit 12F-3).

---

[6] Plaintiff argues the ALJ did "not clearly link her credibility analysis to that evidence, or explain any way in which the medical evidence contradicts [her] description of her symptoms and limitations." ECF #16, p. 10.  But the ALJ discussed the medical evidence in the record in a fair amount of detail, particularly in regard to her pain complaints, and noted, for example, the relatively normal clinical findings, as well as one physician's recommendation that she engage in "high-level exercise in a gym setting," and instruction that she "discontinue her pain medications and instead use over-the-counter Ibuprofen or Tylenol as needed," with "[c]ontinued use of opoids" not recommended. AR 21-22; see also AR 304; Meanal v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (ALJ properly considered physician's failure to prescribe serious medical treatment for supposedly excruciating pain); Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995) (ALJ properly found prescription of physician for conservative treatment only to be suggestive of lower level of pain and functional limitation).

REPORT AND RECOMMENDATION - 12

AR 22.  Plaintiff argues that the ALJ is mischaracterizing her testimony here, that she actually

testified that she experienced a lot of side effects from her medication, including feeling fatigued

and lethargic, and that "[t]he fact that [her] doctor did not record her complaints of medication

side effects is not a convincing reason to reject [her] testimony about" those side effects.  ECF

#16, p. 9.  This argument is wholly without merit.  The fact that plaintiff's reported denials of

fatigue conflict with her hearing testimony is itself a clear and convincing reason for finding her

to be not fully credible.  In addition, Dr. Virgin, plaintiff's treating physician, expressly noted on

several different occasions that she "[d]enies fatigue and weakness."  AR 228, 232, 308, 311,

313, 316, 322, 331.  Far from suggesting Dr. Virgin did not record plaintiff's complaints of side

effects, a much more reasonable reading of this evidence is that she expressly related not having

them during those visits.

       The ALJ also discounted plaintiff's credibility because:

> The claimant has been able to lead an active lifestyle despite her pain
> complaints.  She is the primary caregiver for her daughter.  She testified she
> has looked for work.  She has collected unemployment during the time period
> at issue, indicating she has reported she is capable of working, as that is a
> requirement to obtain such benefits (Exhibit 6D).

AR 22; see Copeland v. Bowen, 861 F.2d 536, 542 (9th Cir. 1988) (noting ALJ gave specific

reasons for rejecting claimant's credibility, including his receipt of unemployment benefits,

indicating he apparently considered himself capable of work and holding himself out as being

available therefor).  Defendant concedes, however, that the record does not clearly show plaintiff

held herself out as being available for full-time work in filing for unemployment benefits.  See

ECF #17, p. 17.  The undersigned thus declines to find this stated reason to be a valid basis for

discounting plaintiff's credibility.

REPORT AND RECOMMENDATION - 13

Nor does the record show that plaintiff engaged in an "active lifestyle," such that she was able to perform household chores or other activities of daily living for a substantial part of the day, or that those activities are necessarily transferrable to a work place setting or inconsistent with her other testimony.[7] See AR 50, 153-63, 189.  While it is true that plaintiff is the primary care giver for her daughter, the record also indicates that she receives significant help with that responsibility from others.  See AR 42, 156, 163, 177, 189.  Accordingly, this too was not a clear and convincing reason for discounting plaintiff's credibility.

On the other hand, the ALJ did not err in discounting plaintiff's credibility on the basis of medical improvement in regard to her mental health issues.  See AR 22-23; Morgan, 169 F.3d at 599 (ALJ may discount claimant's credibility based on medical improvement); Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998).  The ALJ also did not err in noting that plaintiff "attended three therapy sessions in 2008 but did not continue treatment" thereafter. AR 22; see also Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) (upholding ALJ's discounting of claimant's credibility in part due to lack of consistent treatment, noting that fact that claimant's pain was not sufficiently severe to motivate her to seek treatment, even if she had sought some treatment, was powerful evidence regarding extent to which she was in pain); Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) (failure to assert good reason for not following prescribed course of treatment "can cast doubt on the sincerity of the claimant's pain testimony").  Nor has plaintiff specifically

---

[7] The Ninth Circuit has recognized "two grounds for using daily activities to form the basis of an adverse credibility determination." Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007). First, such activities can "meet the threshold for transferable work skills." Id. Thus, a claimant's credibility may be discounted if he or she "is able to spend a substantial part of his or her day performing household chores or other activities that are transferable to a work setting." Smolen, 80 F.3d at 1284 n.7. The claimant, however, need not be "utterly incapacitated" to be eligible for disability benefits, and "many home activities may not be easily transferable to a work environment." Id. In addition, the Ninth Circuit has "recognized that disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations." Reddick, 157 F.3d at 722. Under the second ground in Orn, a claimant's activities of daily living can "contradict his [or her] other testimony." 495 F.3d at 639.

REPORT AND RECOMMENDATION - 14

challenged either of these stated reasons in her opening brief.[8]

The ALJ further discounted plaintiff's credibility because "[s]he began counseling in March 2009 but her claim was closed the same month when she produced no documentation to support her claims of an auto accident or a legally blind daughter," and because "[i]t was found she was collecting unemployment illegally." AR 23.  This too was proper as it goes directly to plaintiff's reputation for honesty, a finding which once more plaintiff has not challenged.  Also proper is the ALJ's calling into question of plaintiff's credibility on the basis that although she "testified to fear of men" and also reported "difficulty getting along with people," that fear is "unsupported by the treatment record" and plaintiff "stated she can be 'fairly charismatic if I want to be.'" AR 23.  Here too, plaintiff offers no specific challenge.

It is true, as noted above, that not all of the ALJ's stated reasons for finding plaintiff to be not fully credible were proper.  Nevertheless, the fact that some of the reasons for discounting plaintiff's credibility were improper, does not render the ALJ's credibility determination invalid, as long as that determination is supported by substantial evidence in the record, as it is in this case for the reasons discussed above. See Tonapetyan, 242 F.3d at 1148; Bray v. Commissioner of Social Sec. Admin., 554 F.3d 1219, 1227 (9th Cir. 2009) (while ALJ relied on improper reason for discounting claimant's credibility, he presented other valid, independent bases for doing so, each with "ample support in the record").

---

[8] Plaintiff argues in her reply brief that the ALJ failed to acknowledge she was taking multiple medications, despite also testifying that they caused significant side effects. See ECF #18, p. 9 (citing AR 47-49).  As discussed above, however, the ALJ did not err in discounting plaintiff's credibility on the basis that the medical record contradicts her testimony with regard to at least two of those alleged side effects, fatigue and weakness.  Nor does plaintiff's argument deal with the fact that the ALJ also properly found she actually experienced improvement on medication, or that the ALJ provided a number of other valid reasons for discounting plaintiff's credibility, and thus was not required to accept her testimony as to the side effects she claims to have experienced.  Indeed, plaintiff does not point to any medical evidence in the record that these side effects occurred, let alone that they had a significant impact on her functioning.

REPORT AND RECOMMENDATION - 15

III.     The ALJ's Assessment of Plaintiff's Residual Functional Capacity

Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920.  If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. See id.  If a disability determination "cannot be made on the basis of medical factors alone at step three of that process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 *2.  A claimant's residual functional capacity ("RFC") assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. See id.

Residual functional capacity thus is what the claimant "can still do despite his or her limitations." Id.  It is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. See id.  However, an inability to work must result from the claimant's "physical or mental impairment(s)." Id.  Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id.  In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

In this case, the ALJ found plaintiff had the residual functional capacity:

**. . . to perform light work . . . except she is limited to frequent balancing and stooping.  She can frequently bend the neck forward and rotate the neck.  She is limited to occasional backward flexion with the neck.  She is limited to occasional backward flexion with the neck and frequent reaching, handling, and fingering.  She requires a sit/stand option.  She is limited to simple routine tasks is a routine work environment.  She should**

REPORT AND RECOMMENDATION - 16

**have no contact with the public and only superficial coworker contact.**

AR 20-21 (emphasis in original).  Plaintiff argues the ALJ erred in assessing the above residual functional capacity, because it does not include all of the limitations described in her testimony. As discussed above, however, the ALJ did not err in discounting plaintiff's credibility regarding her subjective complaints, and thus was not obligated to adopt any additional limitations that are contained in that testimony.  On the other hand, also as discussed above, the ALJ erred in failing to properly consider the sit/stand/walk option assessed by Mr. Gehley, and therefore it cannot be said at this time that the ALJ's RFC assessment is completely accurate.

IV.   The ALJ's Findings at Step Five

If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. See Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 404.1520(d), (e), § 416.920(d), (e).  The ALJ can do this through the testimony of a vocational expert or by reference to defendant's Medical-Vocational Guidelines (the "Grids"). Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000).

An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. See Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984).  The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. See Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988).  Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by the medical record." Id. (citations omitted).  The ALJ, however, may omit from that description those limitations he or

REPORT AND RECOMMENDATION - 17

1    she finds do not exist. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

2        At the hearing, the ALJ posed hypothetical questions to the vocational expert containing

3    substantially the same limitations as were included in the ALJ's assessment of plaintiff's residual

4    functional capacity. See AR 61-62.  In response to these questions, the vocational expert testified

5    that an individual with those limitations would be able to perform other jobs. See id.  Based on

6    the testimony of the vocational expert, the ALJ found plaintiff would be capable of performing

7    other jobs existing in significant numbers in the national economy. See AR 24-25.

8

9        Plaintiff argues the hypothetical question the ALJ posed did not include all of her

10   limitations.  The undersigned agrees that for the same reason the ALJ's RFC assessment cannot

11   be said to be completely accurate, it also cannot be said that the hypothetical question the ALJ

12   posed, which is premised on that RFC assessment, includes all of plaintiff's limitations at this

13   time.  The undersigned rejects, however, plaintiff's argument that the jobs the vocational expert

14   identified that could be performed should not have been accepted by the ALJ, because they

15   involve Level 2 reasoning as defined by the Dictionary of Occupational Titles ("DOT"), whereas

16   the ALJ limited her to simple, routine tasks in assessing her RFC, which is commensurate with

17   Level 1 reasoning.

18

19       The DOT defines Level 1 through 2 reasoning as follows:

20   LEVEL 2

21

22   Apply commonsense understanding to carry out detailed but uninvolved
     written or oral instructions. Deal with problems involving a few concrete
23   variables in or from standardized situations.

24   LEVEL 1

25   Apply commonsense understanding to carry out simple one- or two-step
     instructions. Deal with standardized situations with occasional or no variables
26   in or from these situations encountered on the job.

REPORT AND RECOMMENDATION - 18

DOT, Appendix C.  The undersigned disagrees, however, that the ALJ's limitation to simple, routine tasks is commensurate with Level 1 reasoning in this case.  As pointed out by defendant, several courts have found Level 2 reasoning to be consistent with the ability to do simple, routine and/or repetitive work tasks. See, e.g., Hackett v. Barnhart, 395 F.3d 1168, 1176 (10th Cir. 2005) (finding Level 2 reasoning to be more consistent with limitation to simple, routine work tasks); Meissl v. Barnhart, 403 F.Supp.2d 981, 983-85 (C.D. Cal. 2005) (finding limitation to simple and repetitive tasks to be closer to Level 2 reasoning); Flaherty v. Halter, 182 F.Supp.2d 824, 850-51 (D. Minn. 2001) (finding Level 2 reasoning did not conflict with limitation to work involving simple, routine, repetitive, concrete, and tangible tasks).

It is true, as pointed out by plaintiff, that two courts appear to disagree with the position taken by the above courts. See Lucy v. Chater, 113 F.3d 905, 909 (8th Cir. 1997) (rejecting contention that claimant limited to following only simple instructions can engage in full range of sedentary work because many unskilled jobs in that category require reasoning levels of 2 or higher); see also Whitzell v. Barnhart, 379 F.Supp.2d 204, 219-20 (D. Mass. 2005).  However, the undersigned finds more persuasive the discussion of this issue made by the United States District Court for the Central District of California:

> This leaves the question of whether the vocational expert's opinion contradicted the DOT's descriptions for Meissl's other work as a stuffer given the ALJ's RFC finding limiting Meissl to "simple, repetitive" tasks. The Court finds that it does not.
>
> As one goes up the numerical reasoning development scale used by the DOT, the level of detail involved in performing the job increases while the job task becomes less routine. For example, a job with a reasoning level of one only requires that the worker be able to "[a]pply commonsense understanding to carry out simple one-or two-step instructions" in "standardized situations with occasional or no variables." DOT at 1011. In contrast, a job with a reasoning level of three would require that the worker "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and deal "with problems involving several concrete

REPORT AND RECOMMENDATION - 19

variables ...." DOT at 1011. The middle ground between these two points is also where the vocational expert identified a job with the lowest reasoning development score that Meissl could perform, namely a stuffer.

A job with a reasoning level of two requires that the worker "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions" and deal with problems "involving a few concrete variables ...." DOT at 1011. Thus, such a job would involve more detail, as well as a few more variables, than that with a reasoning level of one. The question becomes whether a person limited to carrying out simple, repetitive instructions could still perform a job with such a reasoning score.

Meissl focuses on the fact that the DOT description for a reasoning level of 2 uses the word "detailed." Essentially, Meissl seeks to equate the DOT's use of the word "detailed" with the Social Security regulations' use of the word "detailed instructions" in formulating a claimant's mental RFC. The Court is not convinced that such a neat, one-to-one parallel exists between the two.

The Social Security regulations separate a claimant's ability to understand and remember things and to concentrate into just two categories: "short and simple instructions" and "detailed" or "complex" instructions. 20 C.F.R. § 416.969a(c)(1)(iii); *see also* 20 C.F.R. part 404, subpart P, Appendix 1, Listing 12.00C(3) ("You may be able to sustain attention and persist at simple tasks but may still have difficulty with complicated tasks"). The DOT, on the other hand, employs a much more graduated, measured and finely tuned scale starting from the most mundane ("simple one- or two-step instructions" at level one), moving up to the most complex ("applying principles of logical or scientific thinking ... apprehend the most abstruse classes of concepts" at level six). DOT at 1010-1011. To equate the Social Security regulations use of the term "simple" with its use in the DOT would necessarily mean that all jobs with a reasoning level of two or higher are encapsulated within the regulations' use of the word "detail." Such a "blunderbuss" approach is not in keeping with the finely calibrated nature in which the DOT measures a job's simplicity.

Even more problematic for Meissl's position is that she ignores the qualifier the DOT places on the term "detailed" as also being "uninvolved." This qualifier certainly calls into question any attempt to equate the Social Security regulations' use of the term "detailed" with the DOT's use of that term in the reasoning levels. Instead of simply seeking to equate the two scales based on the serendipity that they happen to employ the same word choice, a much more careful analysis is required in comparing the claimant's RFC with the DOT's reasoning scale.

Here, the ALJ found that Meissl could perform not just simple tasks but also ones that had some element of repetitiveness to them. A reasoning level of one

REPORT AND RECOMMENDATION - 20

on the DOT scale requires slightly less than this level of reasoning. While reasoning level two notes the worker must be able to follow "detailed" instructions, it also (as previously noted) downplayed the rigorousness of those instructions by labeling them as being "uninvolved."

The Court finds that there is much to recommend for believing that Meissl's reasoning level is at level two rather than at level one. A reasoning level of one indicates, both by the fact that it is the lowest rung on the development scale as well as the fairly limited reasoning required to do the job, as applying to the most elementary of occupations; only the slightest bit of rote reasoning being required. For example, the DOT describes the following jobs as requiring only a reasoning level of one: Counting cows as they come off a truck (job title Checker (motor trans.)); pasting labels on filled whiskey bottles (job title Bottling-Line Attendant (beverage)); and tapping the lid of cans with a stick (job title Vacuum Tester, Cans). *See* DOT at 931, 936, 938. Someone able to perform simple, repetitive instructions indicates a level of reasoning sophistication above those listed. Other courts have so held. *See Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir.2005) (holding that "level-two reasoning appears more consistent with Plaintiff's RFC" to "simple and routine work tasks"); *Money v. Barnhart*, 91 Fed.Appx. 210, 214, 2004 WL 362291, at *3 (3rd Cir.2004) ("Working at reasoning level 2 would not contradict the mandate that her work be simple, routine and repetitive"). As one court explained:

The ALJ's limitation for the Plaintiff, with respect to an appropriate reasoning level, was that she could perform work which involved simple, routine, repetitive, concrete, tangible tasks. Therefore, the DOT's level two reasoning requirement did not conflict with the ALJ's prescribed limitation. Although the DOT definition does state that the job requires the understanding to carry out detailed instructions, it specifically caveats that the instructions would be uninvolved-that is, not a high level of reasoning.

*Flaherty v. Halter*, 182 F.Supp.2d 824, 850 (D.Minn.2001).

Meissl v. Barnhart, 403 F.Supp.2d 981, 983-85 (C.D.Cal. 2005).

This case is somewhat different than the situation facing the district court in Meissl.  As discussed by the district court above, in Meissl the ALJ limited the claimant to simple and *repetitive* tasks, whereas the ALJ in this case limited plaintiff to simple *routine* tasks.  But the undersigned finds the fact that in one case the work involves repetitive tasks, whereas in this one routine ones are involved, to be a distinction without a meaningful difference, nor is there any

REPORT AND RECOMMENDATION - 21

1   evidence to the contrary.  Further, as the <u>Meissl</u> court noted, Level 1 reasoning is "the lowest

2   rung on the development scale," which involves "fairly limited reasoning required to do the job,"

3   and is to be applied to "the most elementary of occupations," with "only the slightest bit of rote

4   reasoning being required." <u>Id.</u> at 984.

5           It is true that in finding the claimant in that case could perform Level 2 reasoning, the

6   district court in <u>Meissl</u> focused on the ALJ's finding that the claimant could do "not just simple

7   tasks but also ones that had some element of repetitiveness to them."  While it also is true that

8   the ALJ here made no such finding regarding repetitiveness, the ALJ gave no indication she

9   intended to limit plaintiff to those type of jobs requiring "only the slightest bit of rote reasoning."

10  As such, there is no error here or conflict between the DOT and the testimony of the vocational

11  expert requiring further inquiry by the ALJ.[9]  Nor does the record support a finding that plaintiff

12  would have extreme difficulties in being punctual or in maintaining attendance, such that she

13  would miss more than two days of work a month.

14  VIII.   <u>This Matter Should Be Remanded for Further Administrative Proceedings</u>

15          The Court may remand this case "either for additional evidence and findings or to award

16  benefits." <u>Smolen</u>, 80 F.3d at 1292.  Generally, when the Court reverses an ALJ's decision, "the

17  proper course, except in rare circumstances, is to remand to the agency for additional

18  investigation or explanation." <u>Benecke v. Barnhart</u>, 379 F.3d 587, 595 (9th Cir. 2004) (citations

19  omitted).  Thus, it is "the unusual case in which it is clear from the record that the claimant is

---

[9] The ALJ may rely on vocational expert testimony that "contradicts the DOT, but only insofar as the record contains persuasive evidence to support the deviation." <u>Johnson v. Shalala</u>, 60 F.3d 1428, 1435 (9th Cir. 1995). The ALJ, furthermore, has the affirmative responsibility to ask the vocational expert about possible conflicts between her testimony and information in the DOT. <u>Haddock v. Apfel</u>, 196 F.3d 1084, 1091 (10th Cir. 1999); SSR 00-4p, 2000 WL 1898704.  Before relying on evidence obtained from a vocational expert to support a finding of not disabled, therefore, the ALJ is required to "elicit a reasonable explanation for any discrepancy" with the DOT. <u>Haddock</u>, 196 F.3d at 1087; SSR 00-4p, 2000 WL 189704 *1.  The ALJ also must explain in his or her decision how the discrepancy or conflict was resolved. SSR 00-4p, 2000 WL 189704 *4.  Here, though, as explained above, there is no discrepancy or conflict requiring resolution by the ALJ.

REPORT AND RECOMMENDATION - 22

unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." Id.

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Because issues still remain with respect to the sit/stand/walk option assessed by Mr. Gehley and the sit/stand option adopted by the ALJ, and thus also with respect to the ALJ's assessment of plaintiff's residual functional capacity and plaintiff's ability to perform other jobs existing in significant numbers in the national economy, remand for further administrative proceedings is appropriate in this case.

<u>CONCLUSION</u>

Based on the foregoing discussion, the undersigned recommends the Court find the ALJ improperly concluded plaintiff was not disabled. Accordingly, the undersigned recommends as well that the Court reverse the ALJ's decision and remand this matter to defendant for further administrative proceedings in accordance with the findings contained herein.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. See also Fed. R. Civ. P. 6. Failure to file

REPORT AND RECOMMENDATION - 23

objections will result in a waiver of those objections for purposes of appeal. See Thomas v. Arn, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **December 7, 2012**, as noted in the caption.

DATED this 15th day of November, 2012.

Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 24